# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br>    Plaintiff, <br><br> v. <br><br> JOSEPH EVENTINO DELEON, <br>    Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § | CRIMINAL ACTION NO: <br> 3:21-CR-00236-E(2) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Joseph Eventino DeLeon's Motion for a New Trial, which seeks new trial on the bases (i) that he received ineffective assistance of counsel, (ii) that the prosecutor's closing arguments shifted its burden of proof, (iii) that the trial court issued an incorrect and misleading jury instruction, and (iv) that the weight of the evidence preponderates against the verdict. (ECF No. 179 at 6). For the reasons enumerated hereunder, the Court DENIES DeLeon's Motion.

### I.    BACKGROUND

DeLeon was charged by superseding indictment on December 21, 2021, with conspiracy to commit wire fraud. (ECF No. 26). DeLeon pleaded not guilty. (ECF No. 35). The Court conducted a thirteen-day trial in July to August of 2023. The jury found DeLeon guilty of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (ECF No. 156 at 1).

On September 14, 2023, DeLeon moved for new trial. (ECF No. 179). The government responded. (ECF No. 186). DeLeon filed no reply. Having been fully briefed, DeLeon's Motion for New Trial is ripe for determination.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 permits the district court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016). The "interest of justice," moreover, may be determined by the "trial judge's evaluation of witnesses and weighing of the evidence." *United States v. Wall*, 389 F.3d 457, 465–66. (5th Cir. 2004). Although the Court has broad discretion in ruling on a Rule 33 motion, it may not grant a new trial unless "the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006). These motions are "disfavored and must be reviewed with great caution." *United States v. Eghobor*, 812 F.3d 352, 363 (5th Cir. 2015). Rule 33 divides motions for a new trial into two categories: (i) motions based on newly discovered evidence and (ii) motions based on "other grounds." Fed. R. Crim. P. 33; *Wall*, 389 F.3d at 466. DeLeon presents no "newly discovered evidence," so the Court next addresses each of the "other grounds" bases he asserts in support of his Motion for New Trial. *See* Fed. R. Crim. P. 33.

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, a defendant must show that: (i) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In *Strickland,* the Supreme Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,*

466 U.S. at 689. "'[T]he Sixth Amendment entitles a criminal defendant to reasonable, but not perfect, representation of counsel.'" *United States v. Lincks*, 82 F.4th 325, 332 (5th Cir. 2023) (quoting *States v. Valdez*, 973 F.3d 396, 404 (5th Cir. 2020)).

Even if counsel is proven deficient, a petitioner must next prove prejudice. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). To prove such prejudice, a defendant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson,* 178 F.3d 309, 312 (5th Cir.1999) (citing *Strickland,* 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Crane*, 178 F.3d at 312 (citation omitted). This prejudice inquiry "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see, e.g.*, *Crane*, 178 F.3d at 313 (discussing the same in the sentencing context).

  *i.*  *Whether Counsel's Performance Was Deficient*

DeLeon's ineffective assistance of counsel argument is based on a "misunderstanding" regarding a Federal Rule of Criminal Procedure 404(b) hearing that the Court conducted on the government's 404(b) witnesses. (ECF No. 179 at 11-14).[1] Stone moved to exclude those witnesses. (ECF No. 97). DeLeon filed no motion to exclude the government's 404(b) witnesses and filed no notice of his 404(b) witnesses. Nevertheless, DeLeon refers specifically to unheard testimony from Margarita Muñoz, Forest Calhoun, Jr., Stephanie Hallgren. DeLeon filed a Second Amended Witness List, which includes Muñoz but does not include Calhoun, Jr. or Hallgren. (ECF No. 95 at 1).

---

[1] The Court notes that this section of DeLeon's briefing is rife with characterizations about the trial record and recitation of circumstances that were never presented before the Court. (*See* ECF No. 179 at 8-14). For example, the Motion for New Trial includes recitation of discussions DeLeon had with counsel. (*See* ECF No. 11).

During the hearing, both counsel for DeLeon—Greg Westfall and Frank Sellers—appeared. (ECF No. 202 at 3). After Stone's counsel argued to exclude one of the government's 404(b) witnesses, the Court asked DeLeon's counsel for response. Westfall responded: "Your Honor, we're not going to have argument on any of this." (ECF No. 202 at 17). At the end of the hearing, the Court granted Stone's motion to exclude the government's 404(b) witnesses as ordered in, (ECF No. 128):

> After due consideration of Defendant Stone's Motion, the Government's response, Defendant Stone's reply, and oral argument, the Court GRANTS Defendant Stone's Motion to Exclude Government 404(b) Witnesses, (ECF No. 97), and excludes the following 404(b) witnesses: Gloria Hernandez, Dena Hirsch Kimbrell, Jonathan Perez, and Adriana Moreno. FBI SA Timothy Bell is excluded insofar as his testimony relates to any Rule 404(b) evidence.
>
> It is ORDERED that Gloria Hernandez, Dena Hirsch Kimbrell, Jonathan Perez, and Adriana Moreno are prohibited from testifying during the government's case in chief.

(ECF No. 128 at 1). During the end of the 404(b) hearing, the Court stated:

> I'm reserving the right to revisit these issues, if we believe the door's been opened. And if that -- if you believe that's the case, please ask to approach. We'll kick the jury out, we'll talk about it and take it from there.

(ECF No. 202 at 95). Neither the Court's order, (ECF No. 128), nor any discussion at the 404(b) hearing, (ECF No. 202), excluded Muñoz; Calhoun, Jr.; or Hallgren from testifying. Those potential witnesses were not discussed during the 404(b) hearing. (*See* ECF No. 202). On July 21, 2023, the Court addressed the Parties' motions in limine; Westfall was present on behalf of DeLeon. (ECF No. 203 at 3). During this discussion, Stone's counsel raised the issue of 404(b) witnesses. (ECF No. 203 at 7-8). The Court explained:

> I'm glad you brought that up. So here is the spirit of my ruling on that. You know, we had our motions hearing last week. It's this Court's intention that certainly the witnesses can testify to -- assuming there is no objection -- can testify to the allegations contained in this indictment. As to any other alleged bad acts, crimes or wrongs, if you would instruct your witnesses not to delve into that until we can

> have a *sub rosa* hearing outside the presence of the jury to determine the admissibility.
>
> . . . I'm not saying that it wouldn't come in; but I think it would be appropriate to have a chat outside the presence of the jury. So if the government will instruct their witnesses.
>
> And not that defendants would do this to each other. But as much as it applies, your witnesses, any acts not included in the indictment. And by that, the spirit of that, I mean anything other than actions alleged to have happened to this particular victim. If there are other people, if you will approach or somehow flag the Court, then we'll take that up outside the presence of the jury.

(ECF No. 203 at 8-9). Trial testimony began on July 26, 2023, and ended on August 9, 2023. DeLeon called six witnesses to testify on his behalf; DeLeon did not call Muñoz; Calhoun, Jr.; or Hallgren.

Now, DeLeon asserts that his counsel "mistakenly thought Margarita somehow was under the umbrella of excluded 404(b) witnesses." (ECF No. 179 at 12). DeLeon's counsel asserts "[i]t was a simple misunderstanding of the Court's ruling." (ECF No. 179 at 12). However, the record shows DeLeon's counsel was present for each of the pertinent trial discussions on 404(b), which included repeated admonishments that the Court would consider testimony from such witnesses with appropriate hearing outside the presence of the jury. (*See* ECF Nos. 202; 203). Sellers attaches an affidavit, which suggests he relied on Westfall's representations about the 404(b) witnesses—"that Margarita's testimony would almost certainly be excluded as well." (ECF No. 179 at 41).[2]

---

[2] Sellers's affidavit states:

> Prior to and during trial, however, Greg told me that the Court had excluded all of the government's 404(b) witnesses. Greg was convinced that Margarita's testimony would almost certainly be excluded as well. I didn't verify whether the Government had included Margarita in its 404(b) notice (it did not). Because of my discussion with Greg-and because I missed the final pretrial hearing-I took Greg at his word. I did not re-review the Court's written order, which specifically excludes a list of 404(b) witnesses (Margarita is not on the list). The Court never included Margarita in any of its rulings. And even if she was included as a 404(b) witness, we still should have presented her for the Court's review and then tried to get her testimony to the jury.

(ECF No. 179 at 41).

The record shows both Westfall and Sellers were present during the 404(b) witness motions hearing, (ECF No. 202), and Westfall was present during the motion in limine hearing wherein the Court admonished the Parties about 404(b) witnesses, (ECF No. 203).[3] No evidence in the record shows how or why Westfall misunderstood the Court's ruling, if at all. (*See generally* ECF No. 179).

Nevertheless, Sellers states, in conclusory fashion, "[i]n hindsight, I should have fought to get Margarita on the stand. As for me, I had no strategic reason not to." (ECF No. 179 at 41). "Because deciding whether to call witnesses is a strategic trial decision, this Court has held that complaints of uncalled witness are 'disfavored' as a source of *Strickland* habeas review." *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005) (discussing whether a federal habeas petitioner who alleges ineffective assistance of counsel had shown that [(i)] his counsel's performance was deficient and [(ii)] that this deficient performance resulted in actual prejudice."). In *Harris*, the Fifth Circuit ultimately determined that counsel's failure to call additional witnesses was a strategic decision and not objectively unreasonable because, *inter alia*: (i) "none of the witnesses would have been able to testify to anything relevant to [that defendant's] guilt or innocence;" and (ii) calling one of those witnesses would have opened the door to allow cross-examination on defendant's racist statements. 408 F.3d 186, 190-91. Here—upon review of the affidavits DeLeon submitted in support of his ineffective assistance of counsel claims from Muñoz; Calhoun, Jr.; and Hallgren—the anticipated testimony likewise does not testify to anything relevant to DeLeon's guilt or innocence as to the relevant conspiracy. Furthermore, as to Muñoz's affidavit, some of her statements would open the door for the government to cross examine whether DeLeon acceded to or worked in furtherance of what Muñoz describes as various immigration and worker's

---

[3] Westfall stated to the Court "Your Honor, Greg Westfall. And Frank Sellers is not present, but he's on the case; but we represent Joe DeLeon." (ECF No. 203 at 5).

compensation fraud that Defendant Stone accused of Muñoz—a set of circumstances that involved keeping information secret. (*See* ECF No. 179 at 28-30).[4] Under these circumstances, the Court must conclude that DeLeon's counsel's decision to not call Muñoz; Calhoun, Jr.; or Hallgren was (i) a strategic decision and (ii) not objectively unreasonable. DeLeon asks us to review—in hindsight—that his counsel's failure to call these witnesses amounted to meeting the first prong of ineffective assistance of counsel. However, such judgment in hindsight is not permitted. *United States v. Cockrell*, 720 F.2d 1423, 1429 (5th Cir. 1983) ("It is clear that she had developed a defensive strategy. Even though this strategy was unsuccessful, a strategy is not proved wrong because, if as is the usual circumstance, a guilty person is convicted. We have repeatedly stated that a counsel should not be judged ineffective by hindsight."). Thus, the Court concludes DeLeon's counsel's performance was not deficient.

> ii.   Whether DeLeon Can Show Prejudice

DeLeon's argument as to the prejudice prong is based on the assertion that the jury "never heard about how [DeLeon], too, was a Bill Stone victim." (ECF No. 179 at 13). However, the trial record contains evidence that DeLeon's counsel elicited testimony before the jury as to this assertion. (*See* ECF No. 211 at 10-12; ECF No. 220 at 72-73). Otherwise, DeLeon asserts Muñoz's evidence could have shown Defendant Stone's "modus operandi." (ECF No. 179 at 13) (citing *United States v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991)). However, DeLeon fails to demonstrate that his counsel's asserted deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *See Lockhart*, 506 U.S. at 372. Thus, Court must conclude that DeLeon's counsel's decisions were not prejudicial. The Court DENIES DeLeon's Motion for New Trial as to this basis.

---

[4] Muñoz further stated "Joseph blindly believed everything Mr. Stone told him." (ECF No. 179 at 28).

B.  **Burden of Proof and Prosecutorial Comments**

DeLeon asserts that, during the government's closing statements, the Court "lowered the government's burden of proof." (ECF No. 179 at 16). That is, DeLeon asserts that the government's prosecutorial comments constitute reversible error—and further constitute basis for new trial. (*See* ECF No. 179 at 15-19) (citing *United States v. Diaz–Carreon*, 915 F.2d 951, 956 (5th Cir. 1990). The Supreme Court has explained the federal prosecutor's role in the criminal justice system as follows:

> [t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States,* 295 U.S. 78, 88 (1935)*; see also United States v. Anchondo–Sandoval*, 910 F.2d 1234, 1238 (5th Cir. 1990).

The Court's goal is to make a criminal trial "a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt[.]" *United States v. Carter*, 953 F.2d 1449, 1460 (5th Cir. 1992) (quoting *United States v. Garza*, 608 F.2d 659, 662 (5th Cir. 1979)). The Fifth Circuit generally applies "a two-step analysis to claims of prosecutorial misconduct." *United States v. Weast*, 811 F.3d 743, 752 (5th Cir. 2016) (quotation omitted). The Court first assesses "whether the prosecutor made an improper remark. If so, then

[the Court] ask[s] whether the defendant was prejudiced." *Weast*, 811 F.3d at 752 (quotation omitted). According to the Fifth Circuit,

> [t]he prejudice step sets a high bar. . . . The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. [The Fifth Circuit] generally look[s] to three factors in deciding whether any misconduct casts serious doubt on the verdict: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.

*Weast*, 811 F.3d at 752 (quotation omitted).

"In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." *United States v. Virgen–Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). The Court must "test the magnitude of the prejudicial effect of the prosecutor's remarks by considering them in the context of the trial and attempting to ascertain their intended effect." *Virgen–Moreno*, 265 F.3d at 291. The prosecutor's argument "must be considered in light of the argument to which it responded." *United States v. Canales*, 744 F.2d 413, 424 (5th Cir. 1984).

"A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Valas*, 822 F.3d 228, 243 (5th Cir. 2016). "A prosecutor's argument is reversible error only when so improper as to affect a defendant's substantial rights." *Valas*, 822 F.3d at 243 (quoting *United States v. Vaccaro*, 115 F.3d 1211, 1215 (5th Cir. 1997)). "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Valas*, 822 F.3d at 243 (quoting *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989)); *see also United States v. Smith*, 814 F.3d 268, 276 (5th Cir. 2016). If a "prosecutor's misconduct substantially affected the fairness, integrity, and public reputation of [the] proceedings, a new trial is warranted." *Smith*, 814 F.3d at 277.

In his argument on prosecutorial comments, DeLeon's brief asserts:

> Within moments of closing statements, **the prosecutor said "we do not have to prove whether Joe DeLeon believed the secret probation was real or not."** 11BRR11. Of course, this elicited a reaction from defense counsel, and the jury was excused. 11BRR11. Defense counsel objected that the prosecutor's comment was a misstatement of law. The prosecutor responded that Joe's knowledge was a "detail" that the Government did not have to prove. 11BRR12. The prosecutor averred "the object of the conspiracy is to defraud [C.T.] under the basis of a probation, not whether the probation was real or not." 11BRR12.
>
> After much argument from the defense, the Court ultimately agreed with the Government that parties to a conspiracy do not have to know all the details of that conspiracy and so permitted the Government's argument. 11BRR14-19. It brought the jury back in and referred the jury back to the charge. The first words out of the prosecutor's mouth were those validated by the Court: "**Based on what the law tells us and the facts of this case, the government does not have to prove whether Joe DeLeon believed the secret probation was real or not.**" 11BRR19.

(ECF No. 179 at 16-17);[5] (*see* ECF No. 222 at 17-19).

Here, it is undisputed that the Court repeatedly instructed the Court to follow the law as provided by the Court and in the Jury Charge. The Jury Charge provides instructions as to conspiracy to commit wire fraud, including:

> For you to find a defendant guilty of the offense alleged in Count One of the Superseding Indictment, charging violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343), that is, Conspiracy to Commit Wire Fraud, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> First:   That the defendant and at least one other person made an agreement to commit the crime of Wire Fraud, as charged in the Superseding Indictment
>
> Second: That the defendant knew of the unlawful purpose of the agreement; and
>
> Third:  That the defendant joined in it willfully, that is, with the intent to further the unlawful purpose.

---

[5] When the jury returned from the break to address DeLeon's objection to the prosecutorial comments, the Court instructed:

> So before we go back to closing arguments, remember that you are the judges of the facts, I am the judge of the law. I have given you the law that governs this case and you are to be bound thereby. But you will determine what the facts are.

(ECF No. 222 at 19).

> A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member. One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.
>
> The Government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the Government does not need to prove that all of the details of the scheme alleged in the Superseding Indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.
>
> Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

(ECF No. 155 at 15-17); *see generally* PATTERN JURY INSTRUCTIONS: FIFTH CIRCUIT (CRIMINAL) 2.15A (2019); *United States v. Rodriguez*, 831 F.3d 663, 668 (5th Cir. 2016) ("the []government need not prove knowledge of all the details of the conspiracy by any [defendant], but only that they had knowledge of the essential object of the conspiracy[.]") (internal quotation omitted); *see also, e.g.*, *United States v. Sanjar*, 876 F.3d 725, 743 (5th Cir. 2017); *United States v. Brooks*, 681 F.3d 678, 698 (5th Cir. 2012), *United States v. Coleman*, 609 F.3d 699, 705 n.2 (5th Cir. 2010); *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009).

In his brief, DeLeon asserts no error as to the law stated in the Jury Charge. DeLeon's briefing states "[i]t is true that co-conspirators do not have to know all the details of the crime to join the conspiracy." (ECF No. 179 at 17). Under these circumstances, the Court must conclude

that the prosecutor's remarks during closing were not improper. Notwithstanding, the Court further concludes that these prosecutorial statements did not prejudice the defendant as (i) the magnitude of the prejudicial effect of the remarks in closing are low, (ii) the Court repeatedly instructed the jury as to the Jury Charge containing all of the law applicable to the case,[6] and (iii) the record contains strong evidence to support the conviction. *See Weast*, 811 F.3d at 752. The Court must "presume that a jury can and will follow an instruction that attorneys' statements are not evidence, []unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating.[]" *United States v. Valencia*, 600 F.3d 389, 409–10 (5th Cir. 2010) (internal quotation omitted); *see generally United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999) ("[T]he district court helped to mitigate any prejudicial effect by instructing the jury to base their decision solely upon the testimony and evidence presented[.]"). Here, the record does not show either an overwhelming probability that the jury was unable to follow the instruction or that the effect was devastating. *Valencia*, 600 F.3d at 409–10. The court further mitigated any prejudicial effect by instructing the jury to base their decision upon the testimony and evidence presented. (*See* ECF No. 222 at 19); (ECF No. 155).

For those reasons, the Court concludes these prosecutorial comments did not cast serious doubt on the correctness of the jury's verdict. *Weast*, 811 F.3d at 752. DeLeon has failed to show

---

[6] During closing, the prosecutor reiterated that the Jury Charge contains the law that controls in the case:

> I want to walk you through the charges. You have the law in front of you. The judge read it to you. That's the law that guides this case. And as we go through them, I'm going to be sure to point out evidence in support. But remember, all of the evidence you heard this week, everything that came from that witness stand, these documents, is for your consideration. And that the words of the lawyers, any one of us, it's not evidence.

(ECF No. 222 at 9-10).

these prosecutorial comments affected his substantial rights. *See Valas*, 822 F.3d at 242-43 (5th Cir. 2016).[7] The Court DENIES DeLeon's Motion for New Trial as to this basis.

### C. Jury Question on Conspiracy

DeLeon next avers that the Court failed to properly respond to a jury question about consistent or inconsistent verdicts with regard to Count 1 (conspiracy). (ECF No. 179 at 19-24). "[J]uries are presumed to follow the district court's instructions and district courts are given wide latitude to respond to jury questions." *United States v. Skelton*, 514 F.3d 433, 446 (5th Cir. 2008). During the jury's deliberations, the jury sent a note to the Court that asked, "Do the defendants of this case for Count 1 have to have the same verdict in order for it to be a conspiracy?" (ECF No. 157 at 3). The Court asked the Parties for their thoughts on this jury question. The Court ultimately responded to the jury question as follows: "The jury charge contains all of the relevant law to guide you in your deliberations. Please continue your deliberations." (ECF No. 157 at 3). DeLeon did not object to this instruction.

Now, DeLeon casts this instruction to the jury on the jury question as "confusing" and "not technically correct"—reframing the jury's question as "can we issue inconsistent verdicts by finding one guilty and the other not guilty." (ECF No. 178-79). The Court disagrees with DeLeon's recasting of the record and Jury Charge. The Court's Jury Charge tracked the language of the Fifth Circuit Pattern Jury Instructions. (ECF No. 155 at 15-17); *see generally* PATTERN JURY INSTRUCTIONS: FIFTH CIRCUIT (CRIMINAL) 2.15A (2019). The Fifth Circuit "afford[s] the trial judge substantial latitude in tailoring her instructions." *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992) (citing *United States v. Rochester*, 898 F.2d 971 (5th Cir.1990)). Instructions

---

[7] *See also generally United States v. Valas*, 822 F.3d 228, 247 (5th Cir. 2016) ("This court 'affords considerable weight to the district court's 'on-the-scene assessment of the prejudicial effect.'") (quoting *United States v. Salcido*, 342 Fed. Appx. 976, 978 (5th Cir. 2009) (quoting *United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir.1996)).

that are "modeled closely after the Fifth Circuit's Pattern Jury Instructions for criminal cases" generally constitute a correct statement of law. *Turner*, 960 F.2d at 464 (collecting cases); *see, e.g.*, *Skelton*, 514 F.3d at 446 (discussing the same); *United States v. Goiburo Martinez*, No. 21-50629, 2022 WL 1580128, at *1 (5th Cir. May 19, 2022) ("The district court's response to the jury's first note was a correct statement of the law, and it tracked the language of the Fifth Circuit's Pattern Jury Instructions.").

DeLeon argues that the Court's instruction "undercut the jury's job of independently evaluating the two defendants." (ECF No. 179 at 23) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)). However—as the Court directed the jury to the Jury Charge—the Jury Charge instructs:

> A separate crime is charged against one or more of the defendants in each count of the Superseding Indictment. Each count, and the evidence pertaining to it, should be considered separately. The case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any of the crimes charged should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

(ECF No. 155 at 11). As answered, the Court instructed the Jury to evaluate each Defendant, count and the corresponding evidence "separately and individually." (ECF No. 155 at 11).[8] The Court DENIES DeLeon's Motion for New Trial as to this basis.

### D. Weight of the Evidence

Last, DeLeon appears to argue that "the weight of the evidence preponderates against the verdict." (ECF 179 at 6). However, DeLeon does not appear to brief this issue. Instead, DeLeon's

---

[8] During Charge discussion, DeLeon's counsel Westfall agreed that this jury instruction was correct.

> [T]he charge does go out of its way to tell the jury that each defendant has to be considered separately and each charge has to be considered separately.

(ECF No. 221 at 45). During the Parties' discussion on answering the jury question, DeLeon's counsel agreed that the Court's ultimate instruction was appropriate.

briefing merely avers "[i]f the jury was permitted to find Joe guilty on anything less than *both* of these mens rea requirements, then its resulting conviction violates Due Process." (ECF No. 179 at 15) (emphasis in original) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). DeLeon provides no briefing as to how or why—in light of the evidence—the government failed to prove its burden or, otherwise, how or why the evidence preponderates against the jury's verdict. (*See* ECF No. 179 at 14-15). Accordingly, the Court must conclude that DeLeon has waived this argument. *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("[A] defendant waives an issue if he fails to adequately brief it."). The Court DENIES DeLeon's Motion for New Trial as to this basis.

Assuming *arguendo* DeLeon's argument was not waived, the Court's result would be the same. As the Fifth Circuit has explained:

> A judge's power to grant a new trial based on a different assessment of the evidence must be "exercised with caution" and "invoked only in exceptional cases." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.) (quoting 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 553, at 487 (1969)). The judge cannot "entirely usurp the jury's function" and set aside the verdict merely because the court would have ruled the other way. *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005).
> . . . .
> The judge's ability to override the jury verdict exists only when the evidence weighs "heavily against the verdict." *Arnold*, 416 F.3d at 360 (quoting *Robertson*, 110 F.3d at 1118). And the authority should be exercised only when the verdict may have resulted in a "miscarriage of justice." *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009) (quoting *Tarango*, 396 F.3d at 672); *Arnold*, 416 F.3d at 361. The "miscarriage of justice" requirement reflects the common-law roots of the new-trial power as a backstop against unjust verdicts, *see supra* p. 296, and the modern Rule's limitation that new trials should be granted only when the "interest of justice so requires," *see* FED. R. CRIM. P. 33.

*United States v. Crittenden*, 46 F.4th 292, 297 (5th Cir. 2022) (internal footnote omitted). Here, this is not an "exceptional case[]" that merits new trial. Again, there is strong evidence to support the jury's verdict. *See generally Crittenden*, 46 F.4th at 298 (discussing weight of evidence). Thus, assuming *arguendo*, the Court would also deny this basis for new trial.

## IV. CONCLUSION

For the reasons enumerated hereabove, the Court **DENIES** DeLeon's Motion for New Trial. (ECF No. 179).

**SO ORDERED**.

Signed this February 23, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS